**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL4086)
Anne Seeling (AS3976)
30 East 39th Street, Second Floor
New York, NY 10016
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiff and the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

GILBERT TRAVIS HERNANDEZ,
*on behalf of himself and others similarly situated,*

        Plaintiff,

        v.

BLUE DIAMOND GROWERS, a California
corporation,

        Defendant.

---

Case No.:

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff GILBERT TRAVIS HERNANDEZ (herein "Plaintiff HERNANDEZ" or "Plaintiff"), individually and on behalf of all other persons similarly situated, by his undersigned attorneys, pursuant to this Class Action Complaint against the Defendant, BLUE DIAMOND GROWERS ("Defendant" or "Blue Diamond"), alleges the following:

## NATURE OF THE ACTION

1.    This is a consumer protection action seeking redress for, and a stop to, Defendant's unfair and deceptive practice of advertising and marketing its "Bold Wasabi & Soy Sauce" almonds (herein the "Product"). *See* **Exhibit A**.

2.      The wasabi plant is native to Japan. The plant's stem has a unique pungent flavor and is a distinctive green color. This stem is made into the food also called "wasabi" by grinding, grating, or powdering it.[1] Wasabi usually accompanies sushi and sashimi either as a condiment or within the sushi itself. Wasabi can either be prepared fresh by a chef or pre-prepared as a paste or powder.

3.      Wasabi plants are scientifically referred to as *Wasabia japonica.*[2] "*Wasabia*"[3] refers to the plant's scientific genus, of which the Japanese plant species used as a condiment (*Wasabia japonica*) is just one of several species.

4.      Real wasabi products are in high demand and are generally expensive. Consequently, cheap substitutes for wasabi that are inferior to real wasabi are manufactured and sold at a price far below the price of genuine wasabi. To emulate real wasabi, wasabi substitutes contain various spicy vegetables, and sometimes additives that dye the food green.

5.      Defendant distributes, manufactures, and sells the Product. Defendant has labeled the Product as "wasabi" and purports that the Product contains authentic wasabi. See below:

---

[1] Except where specifically noted, all subsequent uses of the word "wasabi" refer to the condiment wasabi.
[2] Or, synonymously, "Eutrema japonicum" or "Eutrema wasabi.
[3] Or "Eutrema."



However, in reality, the Product does not contain the wasabi plant at all and so it is not a wasabi food item. The Product is flavored by horseradish to imitate the taste of wasabi. *See* **Exhibit B**. The Product labels are misleading because they state that the Product is a wasabi product, when in reality it is not.

6.     Defendant's mislabeling of the Product as wasabi deceives consumers into believing the Product is a wasabi product, when in reality horseradish is the ingredient in the

Product that gives it its flavor. Horseradish is not closely related to wasabi, as its scientific name *Armoracia rusticana*[4] reveals—the horseradish plant is not only a different species of plant than the wasabi plant, it is in a different genus altogether. *Wasabia* is the genus of wasabi; *Armoracia* is the genus of horseradish.

7.      Defendant's Product is attractive to its target market due to its deceptive and/or materially misleading wasabi claim. Plaintiff and Class members were exposed to Defendant's deceptive wasabi claims because these claims appeared conspicuously on the label of every Product.

8.      As the manufacturer, seller and/or distributor of the Product, Defendant possesses specialized knowledge regarding the ingredients contained in the Product.

9.      Plaintiff brings this proposed consumer class action on behalf of himself and all other persons who, from the applicable limitations period up to and including the present (the "Class Period"), purchased the Product for consumption and not resale.

10.      Defendant markets the Product in a way that is deceptive to consumers under consumer protection laws of New York, the other 49 states, and the District of Columbia.

11.      Defendant violates statutes enacted in each of the fifty states and the District of Columbia that are designed to protect consumers against unfair, deceptive, fraudulent, unconscionable trade and business practices, and false advertising. These statutes include:

1) Alabama Deceptive Trade Practices Act, Ala. Statues Ann. §§ 8-19-1, *et seq.*;
2) Alaska Unfair Trade Practices and Consumer Protection Act, Ak. Code § 45.50.471, *et seq.*;
3) Arizona Consumer Fraud Act, Arizona Revised Statutes, §§ 44-1521, *et seq.*;
4) Arkansas Deceptive Trade Practices Act, Ark. Code § 4-88-101, *et seq.*;
5) California Consumer Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.*, and California's Unfair Competition Law, Cal. Bus. & Prof Code § 17200, *et seq.*;
6) Colorado Consumer Protection Act, Colo. Rev. Stat. § 6 - 1-101, *et seq.*;
7) Connecticut Unfair Trade Practices Act, Conn. Gen. Stat § 42-110a, *et seq.*;

---

[4] Or, synonymously, "*Armoracia lapathifolia* Gilib."

8) Delaware Deceptive Trade Practices Act, 6 Del. Code § 2511, *et seq.;*
9) District of Columbia Consumer Protection Procedures Act, D.C. Code § 28 3901, *et seq.;*
10) Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. § 501.201, *et seq.;*
11) Georgia Fair Business Practices Act, § 10-1-390 *et seq.;*
12) Hawaii Unfair and Deceptive Practices Act, Hawaii Revised Statues § 480 1*, et seq.,* and Hawaii Uniform Deceptive Trade Practices Act, Hawaii Revised Statutes § 481A-1, *et seq.;*
13) Idaho Consumer Protection Act, Idaho Code § 48-601, *et seq.;*
14) Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1, *et seq.;*
15) Indiana Deceptive Consumer Sales Act, Indiana Code Ann. §§ 24-5-0.5-0.1, *et seq.;*
16) Iowa Consumer Fraud Act, Iowa Code §§ 714.16, *et seq.;*
17) Kansas Consumer Protection Act, Kan. Stat. Ann §§ 50 626, *et seq.;*
18) Kentucky Consumer Protection Act, Ky. Rev. Stat. Ann. §§ 367.110, *et seq.,* and the Kentucky Unfair Trade Practices Act, Ky. Rev. Stat. Ann §§ 365.020, *et seq.;*
19) Louisiana Unfair Trade Practices and Consumer Protection Law, La. Rev. Stat. Ann. § § 51:1401, *et seq.;*
20) Maine Unfair Trade Practices Act, 5 Me. Rev. Stat. § 205A, *et seq.,* and Maine Uniform Deceptive Trade Practices Act, Me. Rev. Stat. Ann. 10, § 1211, *et seq.,*
21) Maryland Consumer Protection Act, Md. Com. Law Code § 13-101, *et seq.;*
22) Massachusetts Unfair and Deceptive Practices Act, Mass. Gen. Laws ch. 93A;
23) Michigan Consumer Protection Act, §§ 445.901, *et seq.;*
24) Minnesota Prevention of Consumer Fraud Act, Minn. Stat §§ 325F.68, *et seq.;* and Minnesota Uniform Deceptive Trade Practices Act, Minn. Stat. § 325D.43, *et seq.;*
25) Mississippi Consumer Protection Act, Miss. Code Ann. §§ 75-24-1, *et seq.;*
26) Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.010, *et seq.;*
27) Montana Unfair Trade Practices and Consumer Protection Act, Mont. Code §30-14-101, *et seq.;*
28) Nebraska Consumer Protection Act, Neb. Rev. Stat. § 59 1601, *et seq.,* and the Nebraska Uniform Deceptive Trade Practices Act, Neb. Rev. Stat. § 87-301, *et seq.;*
29) Nevada Trade Regulation and Practices Act, Nev. Rev. Stat. §§ 598.0903, *et seq.;*
30) New Hampshire Consumer Protection Act, N.H. Rev. Stat. § 358-A:1, *et seq. ;*
31) New Jersey Consumer Fraud Act, N.J. Stat. Ann. §§ 56:8 1*, et seq.;*
32) New Mexico Unfair Practices Act, N.M. Stat. Ann. §§ 57 12 1*, et seq.;*
33) New York Deceptive Acts and Practices Act, N.Y. Gen. Bus. Law §§ 349, *et seq.;*
34) North Dakota Consumer Fraud Act, N.D. Cent. Code §§ 51 15 01, *et seq.;*
35) North Carolina Unfair and Deceptive Trade Practices Act, North Carolina General Statutes §§ 75-1, *et seq.;*
36) Ohio Deceptive Trade Practices Act, Ohio Rev. Code. Ann. §§ 4165.01. *et seq.;*
37) Oklahoma Consumer Protection Act, Okla. Stat. 15 § 751, *et seq.;*
38) Oregon Unfair Trade Practices Act, Rev. Stat § 646.605, *et seq.;*
39) Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Penn. Stat. Ann. § § 201-1, *et seq.;*
40) Rhode Island Unfair Trade Practices And Consumer Protection Act, R.I. Gen. Laws § 6-13.1-1, *et seq.;*

*41)* South Carolina Unfair Trade Practices Act, S.C. Code Laws § 39-5-10, *et seq.;*
*42)* South Dakota's Deceptive Trade Practices and Consumer Protection Law, S.D. Codified Laws §§ 37 24 *1, et seq.;*
*43)* Tennessee Trade Practices Act, Tennessee Code Annotated §§ 47-25-101, *et seq.;*
*44)* Texas Stat. Ann. §§ 17.41, *et seq.,* Texas Deceptive Trade Practices Act, *et seq.;*
*45)* Utah Unfair Practices Act, Utah Code Ann. §§ 13-5-1, *et seq.;*
*46)* Vermont Consumer Fraud Act, Vt. Stat. Ann. tit.9, § 2451, *et seq.;*
*47)* Virginia Consumer Protection Act, Virginia Code Ann. §§59.1-196, *et seq.;*
*48)* Washington Consumer Fraud Act, Wash. Rev, Code § 19.86.010, *et seq.;*
*49)* West Virginia Consumer Credit and Protection Act, West Virginia Code § 46A-6-101, *et seq.;*
*50)* Wisconsin Deceptive Trade Practices Act, Wis. Stat. §§ 100. 18, *et seq.;*
*51)* Wyoming Consumer Protection Act, Wyoming Stat. Ann. §§ 40-12-101, *et seq.*

## JURISDICTION AND VENUE

12.     The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332, because this is a class action, as defined by 28 U.S.C § 1332(d)(1)(B), in which a member of the putative Class is a citizen of a different state than Defendant, and the amount in controversy exceeds the sum or value of $5,000,000, excluding interest and costs. *See* 28 U.S.C. § 1332(d)(2).

13.     Alternatively, the Court has jurisdiction over all claims alleged herein pursuant to 28 U.S.C § 1332 because the matter in controversy exceeds the sum or value of $75,000 and is between citizens of different states.

14.     Furthermore, this court has personal jurisdiction over Defendant because its Product are advertised, marketed, distributed, and sold throughout New York State. Defendant engages in the wrongdoing alleged in this Complaint throughout the United States, including New York State. Defendant is authorized to do business in New York State, and Defendant has sufficient minimum contacts with New York and/or otherwise has intentionally availed itself of the markets in New York State, rendering the exercise of jurisdiction by the Court permissible under traditional notions of fair play and substantial justice. Moreover, Defendant engages in substantial and not isolated activity within New York State.

15.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(a) and (b), because a substantial part of the events giving rise to Plaintiff's claims occurred in this District, and Defendant is subject to personal jurisdiction in this District.

**PARTIES**

*Plaintiff*

16.    Plaintiff HERNANDEZ is, and at all times relevant hereto has been, a citizen of New York and a resident of New York County. On September 12, 2018, Plaintiff HERNANDEZ viewed the Product on Amazon.com and was exposed to Defendant's false wasabi claims.

17.    Relying on Defendant's misrepresentations, Plaintiff HERNANDEZ decided to purchase a pack of the 16 oz. Product on Amazon.com for $7.98 that day. He would not have paid this premium price for the Product had he known that the it did not contain any wasabi and actually contains horseradish. As a result, Plaintiff HERNANDEZ was injured when he was denied the benefit of his bargain and paid a premium price for the Product whose value was deceptively inflated by Defendant.

*Defendant*

18.    Defendant Blue Diamond Growers is a corporation organized under the laws of California with its principal executive office at 1802 C Street, Sacramento, CA 95811. Defendant's Agent for Service and Process is Dean LaVallee, located at 1802 C Street, Sacramento, CA 95811.

19.    Defendant develops and markets the Product throughout the United States.  The Product is available at numerous retail and online outlets.

20.    The advertising for the Product, relied upon by Plaintiff, is approved by Defendant and its agents, and is disseminated by Defendant and its agents through advertising containing the misrepresentations alleged herein. The advertising for the Product is designed to encourage

consumers to purchase the Product, and misleads the reasonable consumer, i.e. Plaintiff and the

Class. Defendant owns, manufactures and distributes the Product, and/or authorizes the unlawful,

fraudulent, unfair, misleading and/or deceptive labeling and advertising for the Product.

## FACTUAL ALLEGATIONS
### Defendant Claims the Product Is a Wasabi Product

21.    Defendant manufactures, markets and sells "Bold Wasabi & Soy Sauce" almonds

under its Blue Diamond brand. *See* **Exhibit A**.

22.    Every consumer who saw the packaging, whether in person or online, was exposed

to Defendant's false label representation that the Product contains "wasabi."

23.    The Product is sold on its online store and other online retailers such as

Amazon.com. *See* **Exhibit C**.

24.    All representations shown on the packaging prominently display "wasabi" on the

front label.

### Defendant's Product Does Not Contain Wasabi

25.    Defendant's false and misleading wasabi claims begin with its deceptive product

label and packaging. On each and every Product package label, Defendant prominently represents

that the Product is a wasabi food item.

26.    Defendant claims that the product is a wasabi food item, but "wasabi" specifically

refers to a food made from the stem of the wasabi plant—or the wasabi plant itself. Defendant

claiming its Product contains wasabi implies that the Product contains an ingredient prepared from

the stem of the wasabi plant. However, the ingredient imparting the advertised flavor of the Product

is actually horseradish.

27.    The listed ingredients do not list wasabi, but only horseradish. *See* **Exhibit B**.

Horseradish is a common substitute for wasabi because of its similar pungency.

28.    Naming the Product "wasabi" deceives consumers into believing they are purchasing a product with real wasabi, when in reality they are not. The Product is named "wasabi & soy sauce," and this description states to consumers that the Product contains wasabi. The Product would have been more appropriately named "imitation wasabi & soy sauce," or "horseradish & soy sauce."

## Wasabi and Horseradish Are Different Products

29.    The wasabi plant and horseradish plant greatly differ in flavor, as they are neither the same species nor in the same genus. According to a study comparing the flavor compounds in wasabi and horseradish:

> The main difference between [wasabi and horseradish] is the green odor of wasabi as both of them possess a strong pungent flavor. Horseradish is a distant cousin of wasabi and is sometimes used as a substitute for wasabi with an added green food colour in it (Chadwick et al., 1993).
> ....
> Seven isothiocyanates (ITCs) were identified and measured as flavor compounds in New Zealand grown wasabi rhizomes and horseradish roots. These were iso-propyl ITC, sec-butyl ITC, allyl ITC (AITC), 3-butenyl ITC (3-BITC), 4-pentenyl ITC (4-PITC), 5- hexenyl ITC (5-HITC) and 2-phenylethyl ITC (2-PEITC). The concentration of each ITC except 3-BITC was different in the two plant species and their relative values are given.
> ....
> AITC was the highest concentration ITC in both wasabi (1937.8 mg/kg of fresh rhizome) and horseradish (1658.1 mg/kg fresh root). Its concentration was significantly lower in horseradish (14%) than in wasabi. However, AITC comprised a higher proportion of the total ITC concentration of wasabi (93.7%) than of horseradish (87.2%).
> The level of 4-PITC in wasabi was 47.97 mg/kg of rhizome, (2.32% of the total ITC concentration in wasabi) whereas in horseradish the level was only 8.99 mg/kg of the root, which was significantly lower (81%) than for wasabi.

"Comparison of Flavour Compounds in Wasabi and Horseradish." Food, Agriculture & Environment, vol. 1, no. 2, 27 Apr. 2003, pp. 117–121.

30.    The Product is imitation wasabi and is inferior to real wasabi, with a noticeably different flavor. Real wasabi sells at a premium price above imitation wasabi. It is clear that

9

claiming the Product contains wasabi is meant to mislead consumers and deceive consumers into buying the Product for a premium price.

## A Reasonable Consumer Would Be Deceived

31.    Plaintiff and other reasonable consumers have been deceived and/or materially misled by Defendant's deceptive wasabi claims.

32.    A reasonable consumer would not interpret the Product label to mean that the Product contains horseradish because Defendant's product label states that the Product is "wasabi," falsely communicating that it is authentic wasabi.

33.    Defendant knew that due to its deceptive and/or materially misleading label and packaging, a reasonable customer would expect the Product to contain authentic wasabi.

34.    Plaintiff purchased the Product from Amazon.com during the Class period and in doing so, read and considered the Product description on the front label, and in reliance thereof decided to buy the Product and pay the premium price based on Defendant's false representations.

35.    Defendant's wasabi claims were the primary factor in inducing Plaintiff's purchase of the Product at the advertised price. Plaintiff would not have purchased the Product at that premium price had he known that Defendant's wasabi claims were false and misleading.

36.    These deceptions are especially egregious, because the reasonable consumer in the United States rely on proper labeling for purchase of wasabi products. When a reasonable consumer purchases a wasabi product, they expect a wasabi product, not horseradish. There are numerous articles posted by both the media and regular bloggers that show surprise at such deceptive practices:

Most wasabi paste is fake!
Yes, it's true. Over 95% of wasabi served in sushi restaurants does not contain any real wasabi. Most fake wasabi is made from a blend of horseradish, mustard flour, cornstarch and green food colorant. This means that most people who think they know wasabi have actually never tasted the stuff![5]

The little ball of neon-green stuff — it has the consistency of Play-Doh — perched on the edge of your platter of sushi rolls is wasabi, right? In most area sushi restaurants, the condiment called wasabi is almost always an imitation version, made from mixing water with a powdered "wasabi" that's concocted, typically, from horseradish, mustard, tapioca starch and green food coloring (or dried spinach powder).[6]

Spicy news, sushi lovers: No longer is artificial crab meat the primary impostor invading our beloved rice-and-seaweed feasts. It turns out, the alleged wasabi we slather on our tuna sashimi is likely fake.[7]

Besides being neon-hued and sinus clearing-hot, what exactly is that bright green blob served alongside sashimi? If you're putting it into your soy sauce Stateside, chances are it's a mix of horseradish powder, mustard and green food coloring (yellow dye no. 5 and blue dye no. 1, for those keeping track), and not actual wasabi.[8]

37.     The content and tone of such articles indicate that the deceptive use of horseradish to imitate the presence of wasabi is unknown to most people, thus a reasonable consumer cannot and should not be expected to know this. These articles would be of no interest to the general public if the marketing of horseradish as wasabi was common knowledge.

38.     Class members were deceived by Defendant's deceptive wasabi claims for the same reasons.

---

[5] See "Real wasabi paste", Make Sushi, http://www.makesushi.com/real-wasabi-paste/ (last visited Feb. 14, 2019)
[6] See Charles Ferruzza, "Hot stuff: the difference between real and powdered wasabi," The Pitch, https://www.thepitchkc.com/food-drink/article/20574151/hot-stuff-the-difference-between-real-and-powdered-wasabi (last visited Feb. 14, 2019)
[7] See Cristen Conger, "That Isn't Wasabi On Your Sushi," Refinery29, https://www.refinery29.com/en-us/2016/07/117033/sushi-wasabi-paste-fake (last visited Feb. 14, 2019)
[8] See Liz Grossman, "What's the Deal with Fake Wasabi?", Plate, http://plateonline.com/food/whats-deal-fake-wasabi?allowguest=true (last visited Feb. 14, 2019)

### The Relevant Food Regulations Prohibit the Species Substitution in the Products

39.     Both the FDA and the New York Attorney General have issued warning letters against manufacturers that use substitute species. *See* **Exhibit D**, discussing the substitution of *Ursus arctos* for *Ursus americanus*, and **Exhibit E**, discussing the substitution of *Harpagophytum zeyheri* for *Harpagophytum procumbens* ("Devil's Claw").

40.     Wasabi and horseradish are more distantly related than the products at issue in the warning letters, which concerned different species within the same genus. *Eutrema japonicum* and *Armoracia lapathifolia* Gilib. are not just different species, they are members of different genera.

### Federal Law Prohibits Misbranded Foods Such as Defendant's Product

41.     Federal law, agency regulation, and state law identically prohibit Defendant's misleading labeling practices.

42.     Under the FDCA, 21 U.S.C. § 343(c), a food shall be deemed to be misbranded "[i]f it is an imitation of another food, unless its label bears, in type of uniform size and prominence, the word "imitation" and, immediately thereafter, the name of the food imitated." The Products are misbranded regardless of whether or not Defendant intended to mislead consumers: "FDA advises that the term "misleading" does not require any clear implication regarding intent." 58 FR 64123, 64128.

### State Laws Mirror and Incorporate Federal Law and FDA Regulations

43.     Food labeling laws and regulations of the fifty states and the District of Columbia impose requirements which mirror and incorporate federal law.

44.     New York State law broadly prohibits the misbranding of food in language identical to that found in regulations promulgated pursuant to the FDCA § 403, 21 U.S.C. 343. Under New York Agm. Law § 201, the law specifically provides that "[f]ood shall be deemed to be misbranded

…If it is an imitation of another food, unless its label bears the word "imitation" and immediately thereafter the name of the food imitated in type of uniform size and equal prominence, followed by a statement showing the constituents thereof."

45.    Courts have noted the incorporation of FDA regulations into New York law in evaluating claims brought under NY GBL § 349. *See Ackerman v. Coca-Cola Co.*, No. CV-09-0395 (JG) (RML), 2010 U.S. Dist. LEXIS 73156, at *13 (E.D.N.Y. July 21, 2010) ("New York's Agriculture and Marketing law similarly provides in relevant part that food shall be deemed misbranded '[i]f its labeling is false or misleading in any particular, and incorporates the FDCA's labeling provisions."); *Izquierdo v. Mondelez Int'l, Inc.*, No. 16-cv-04697 (CM), 2016 U.S. Dist. LEXIS 149795, at *11 (S.D.N.Y. Oct. 26, 2016) ("Here [in a slack-fill case brought under NY GBL § 349], New York law expressly incorporates the standard imposed by the FDCA."); *N. Am. Olive Oil Ass'n v. Kangadis Food Inc.*, 962 F. Supp. 2d 514, 519 (S.D.N.Y. 2013) (evaluating claims under New York Gen. Bus. Law §§ 349 and 350 and finding that "New York law deems any product or label that fails to conform to [New York Agm. Law] definitions 'adulterated' or 'misbranded,' and thus unlawful.").

46.    New York Agm. Law § 201 specifically provides that "[f]ood shall be deemed to be misbranded … If it is an imitation of another food, unless its label bears the word "imitation" and immediately thereafter the name of the food imitated in type of uniform size and equal prominence, followed by a statement showing the constituents thereof." Moreover, Part 259.1 of Title 1 of the New York Codes, Rules and Regulations of the State of New York (1 NYCRR § 259.1), incorporates by reference the regulatory requirements for food labeling under the FDCA:

> For the purpose of the enforcement of article 17 of the Agriculture and Markets Law, and except where in conflict with the statutes of this State or with rules and regulations promulgated by the commissioner, the commissioner hereby adopts the current regulations as they appear in title 21 of the *Code of Federal Regulations*

(revised as of April 1, 2013) … in the area of food packaging and labeling as follows: … (2) Part 100 of title 21 of the *Code of Federal Regulations* [21 C.F.R. 100 *et seq*.], containing Federal definitions and standards for food packaging and labeling *General* at pages 5-10….

1 NYCRR § 259.1(a)(2).

## The Product Label Violates Prohibitions Against Falsely Advertising Horseradish Products

47.     The above paragraphs discussed the strength of Plaintiff's claims under regulations that address fake products. These have characterized the Product as a *fake wasabi product* inasmuch as it purports to contain wasabi and does not.

48.     However, the Product also violates consumer protection regulations that prohibit false advertising inasmuch as the Product is a *falsely advertised horseradish product*.

49.     The horseradish used in the Product has a precise definition under applicable regulations. 21 C.F.R. § 182.10 defines horseradish as "*Armoracia lapathifolia* Gilib." The Product name is simply erroneous as displayed on the label because the name does not refer to the Product's characterizing ingredient—horseradish—by its common or usual name: "horseradish." *See* 21 U.S.C. § 343; 21 C.F.R. § 102.5(a).

## The Product Label Is Deceptive, Even Assuming that Wasabi Can Be Made of Horseradish

50.     Even assuming that the Product's mix of spices and flavorings qualified as "real" wasabi for some or all legal purposes, which it does not, regulations would still require that the absence of *Eutrema japonicum* be prominently declared on the label, but it is not. *Eutrema japonicum* is a characterizing ingredient of wasabi products that commands a premium over horseradish on the spice market, and FDA regulations prohibit labels, such as the Product's label,

that create an erroneous impression that characterizing ingredients are in a Product when they are not:

> The common or usual name of a food shall include a statement of the presence or absence of any characterizing ingredient(s) or component(s) . . . when the presence or absence of such ingredient(s) or component(s) in the food has a material bearing on price or consumer acceptance or when the labeling or the appearance of the food may otherwise create an erroneous impression that such ingredient(s) or component(s) is present when it is not, and consumers may otherwise be misled about the presence or absence of the ingredient(s) or component(s) in the food. . . .

21 C.F.R. § 102.5(c).

### Plaintiff and the Class Were Injured as a Result of Defendant's Misrepresentations

51.     As a result of Defendant's false wasabi claims, Plaintiff and the Class members have been injured through their purchase of the Product. Plaintiff and Class members have been deceived into purchasing a Product that they reasonably believed, based on Defendant's representations, to contain authentic wasabi, when it does not.

52.     Plaintiff and Class members were thus injured when they paid the full price of the Product and received an inferior Product than what was represented to them by Defendant.

53.     Plaintiff was thus deprived of the benefit of their bargains, injured in an amount up to the purchase price, to be determined by expert testimony at trial.

### CLASS ACTION ALLEGATIONS

54.     Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the following Class:

> All persons or entities in the United States who made retail purchases of Product during the applicable limitations period, and/or

such subclasses as the Court may deem appropriate ("the Nationwide Class").[9]

In the alternative, Plaintiff seeks to represent a Class or Subclass consisting of:

All persons or entities who made retail purchases of the Product in New York during the applicable limitations period, and/or such subclasses as the Court may deem appropriate ("the New York Class").

55.    The proposed Classes exclude current and former officers and directors of Defendant, members of the immediate families of the officers and directors of Defendant, Defendant's legal representatives, heirs, successors, assigns, any entity in which it has or has had a controlling interest, and the judicial officer to whom this lawsuit is assigned.

56.    Plaintiff reserves the right to revise the Class definition based on facts learned in the course of litigating this matter.

57.    This action is proper for Class treatment under Rules 23(b)(1)(B) and 23(b)(3) of the Federal Rules of Civil Procedure. While the exact number and identities of other Class members are unknown to Plaintiff at this time, Plaintiff is informed and believes that there are millions of Class members. Thus, the Class members are so numerous that individual joinder of all Class members is impracticable.

---

[9] See Fitzhenry-Russell v. Dr. Pepper Snapple Grp., No. 17-cv-00564 NC, 2017 U.S. Dist. LEXIS 155654, at *15 (N.D. Cal. Sep. 22, 2017) ("Yet the Supreme Court did not extend its reasoning to bar the nonresident plaintiffs' claims here, and Bristol-Myers is meaningfully distinguishable based on that case concerning a mass tort action, in which each plaintiff was a named plaintiff.");In re Chinese-Manufactured Drywall Prods. Liab. Litig., No. 09-2047, 2017 U.S. Dist. LEXIS 197612, at *52-53 (E.D. La. Nov. 28, 2017) ("it is clear and beyond dispute that Congress has constitutional authority to shape federal court's jurisdiction beyond state lines to encompass nonresident parties" and interpreting Bristol-Meyers as barring nationwide class actions where jurisdiction over defendant is specific "would require plaintiffs to file fifty separate class actions in fifty or more separate district courts across the United States — in clear violation of congressional efforts at efficiency in the federal courts."); Horton v. USAA Cas. Ins. Co., 266 F.R.D. 360, 364 (D. Ariz. 2009) ("Objectors argue that this Court lacks jurisdiction to certify a nationwide class. This argument is frivolous. A federal court applying Rule 23 of the Federal Rules of Civil Procedure may certify a nationwide class if the requirements for certification are satisfied.").

58.     Common questions of law and fact arise from Defendant's conduct described herein. Such questions are common to all Class members and predominate over any questions affecting individual Class members. These include:

    i.   Whether Defendant labeled, packaged, marketed, advertised and/or sold the Product to Plaintiff and Class members, using false, misleading and/or deceptive packaging and labeling;

    ii.   Whether Defendant's actions constitute violations of the consumer protection laws of New York, and the other states;

    iii.   Whether Defendant omitted and/or misrepresented material facts in connection with the labeling, ingredients, marketing, advertising and/or sale of Products;

    iv.   Whether Defendant's labeling, packaging, marketing, advertising and/or selling of the Products constituted unfair, unlawful or fraudulent practices;

    v.   Whether, and to what extent, injunctive relief should be imposed on Defendant to prevent such conduct in the future;

    vi.   Whether the members of the Classes have sustained damages as a result of Defendant's wrongful conduct;

    vii.   The appropriate measure of damages and/or other relief; and

    viii.   Whether Defendant should be enjoined from continuing their unlawful practices.

59.     Plaintiff's claims are typical of those of the Class members because Plaintiff and the other Class members sustained damages arising out of the same wrongful conduct, as detailed herein. Plaintiff and Class members purchased Defendant's Product and sustained similar injuries arising out of Defendant's conduct in violation of Federal and New York state law. Defendant's unlawful, unfair, and fraudulent actions concern the same business practices described herein

irrespective of where they occurred or were experienced. The injuries of the Class were caused directly by Defendant's unfair and deceptive practices. In addition, the factual underpinning of Defendant's misconduct is common to all Class members and represents a common thread of misconduct resulting in injury to all Class members. Plaintiff's claims arise from the same practices and course of conduct that give rise to the claims of Class members and are based on the same legal theories.

60.    Plaintiff will fairly and adequately represent and pursue the interests of the Class. Plaintiff understands the nature of his claims herein, has no disqualifying conditions, and will vigorously represent the interests of the Class members. Neither Plaintiff nor Plaintiff's counsel have any interests that conflict with or are antagonistic to the interests of the Class members.

61.    Plaintiff has retained highly competent and experienced class action attorneys to represent his interests and those of the Class members. Plaintiff and Plaintiff's counsel have the necessary financial resources to adequately and vigorously litigate this class action. Plaintiff and counsel are aware of their fiduciary responsibilities to the Class members and will diligently discharge those duties by vigorously seeking the maximum possible recovery for them.

62.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy. The damages suffered by any individual Class member are too small to make it economically feasible for an individual Class member to prosecute a separate action, and it is desirable for judicial efficiency to concentrate the litigation of the claims in this forum. Furthermore, the adjudication of this controversy through a class action will avoid the potentially inconsistent and conflicting adjudications of the claims asserted herein. There will be no difficulty in the management of this action as a class action.

63.     The prerequisites to maintaining a class action for injunctive relief or equitable relief pursuant to Rule 23(b)(2) are met, as Defendant has acted or refuses to act on grounds generally applicable to the Classes, thereby making appropriate final injunctive or equitable relief with respect to the Classes as a whole.

64.     The prerequisites to maintaining a class action for injunctive relief or equitable relief pursuant to Rule 23(b)(3) are met, as questions of law or fact common to the Classes predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

65.     The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant. Additionally, individual actions may be dispositive of the interest of all members of the Class, although certain Class members are not parties to such actions.

66.     Defendant's conduct is generally applicable to the Class as a whole and Plaintiff seeks, *inter alia*, equitable remedies with respect to the Class as a whole. As such, Defendant's systematic policies and practices make declaratory relief with respect to the Class as a whole appropriate.

## CAUSES OF ACTION

## COUNT I

**INJUNCTION FOR VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 349
(DECEPTIVE AND UNFAIR TRADE PRACTICES ACT)**

**(brought on behalf of the Nationwide Class, in conjunction with the substantively similar
consumer protection laws of other states and the District of Columbia to the extent New
York consumer protection laws are inapplicable to out-of-state Class members, or, in the
alternative, on behalf of the New York Class)**

67.     Plaintiff realleges and incorporates herein by reference the allegations contained in all preceding paragraphs, and further alleges as follows:

68.     Plaintiff brings these claims on behalf of himself and the other members of the Class for an injunction for violations of New York's Deceptive Acts or Practices Law ("NY GBL § 349").

69.     Alternatively, should the Court not certify Plaintiff's proposed Nationwide Class, Plaintiff brings this claim individually and on behalf of the members of the New York Class for an injunction for violations of New York's Deceptive Acts or Practices Law ("NY GBL § 349").

70.     NY GBL § 349 provides that "deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are . . . unlawful."

71.     Under the NY GBL § 349, it is not necessary to prove justifiable reliance. ("To the extent that the Appellate Division order imposed a reliance requirement on General Business Law [§] 349 … claims, it was error. Justifiable reliance by the plaintiffs is not an element of the statutory claim." *Koch v. Acker, Merrall & Condit Co.*, 18 N.Y.3d 940, 941 (N.Y. App. Div. 2012) (internal citations omitted)).

72.     Any person who has been injured by reason of any violation of the NY GBL § 349 may bring an action in their own name to enjoin such unlawful act or practice, an action to recover

their actual damages or fifty dollars, whichever is greater, or both such actions. The court may, in its discretion, increase the award of damages to an amount not to exceed three times the actual damages up to one thousand dollars, if the court finds the Defendant willfully or knowingly violated this section. The court may award reasonable attorney's fees to a prevailing plaintiff.

73.     The practices employed by Defendant, whereby it advertises, promotes, and markets its Product as a "wasabi" food, are unfair, deceptive, misleading, and in violation of the NY GBL § 349.

74.     The foregoing deceptive acts and practices were directed at consumers.

75.     Defendant should be enjoined from representing the Product as "wasabi" on the Product's labels pursuant to NY GBL § 349.

76.     Plaintiff, on behalf of himself and all others similarly situated, respectfully demands a judgment enjoining Defendant's conduct, awarding costs of this proceeding and attorneys' fees, as provided by NY GBL § 349, and such other relief as this Court deems just and proper.

## COUNT II

## DAMAGES FOR VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 349

## (DECEPTIVE AND UNFAIR TRADE PRACTICES ACT)

**(brought on behalf of the Nationwide Class, in conjunction with the substantively similar consumer protection laws of other states and the District of Columbia to the extent New York consumer protection laws are inapplicable to out-of-state Class members, or, in the alternative, on behalf of the New York Class)**

77.     Plaintiff realleges and incorporates herein by reference the allegations contained in all preceding paragraphs, and further alleges as follows:

78.     Plaintiff brings these claims on behalf of himself and other members of the Nationwide Class for Defendant's violations of NY GBL § 349.

21

79.    Alternatively, should the Court not certify Plaintiff's proposed Nationwide Class, Plaintiff brings this claim individually and on behalf of the other members of the New York Class for Defendant's violations of NY GBL § 349.

80.    Defendant's business act and practices and/or omissions as alleged herein constitute deceptive acts or practices under NY GBL § 349, which were enacted to protect the consuming public from those who engage in unconscionable, deceptive, and unfair acts or practices in the conduct of any business, trade, or commerce.

81.    Defendant's Practices described throughout this Complaint, were specifically directed to consumers and violate the NY GBL § 349 for, *inter alia*, the following reasons:

    a.    Defendant misrepresents or misleadingly advertises that the Product contains "wasabi" with an intent to cause Plaintiff and Class members to believe that the Product contains some wasabi;

    b.    Defendant misleadingly fails to disclose that its "wasabi" in fact consists of horseradish;

    c.    Defendant caused Plaintiff and Class members to suffer a probability of confusion and a misunderstanding of legal rights, obligations and/or remedies by and through their conduct;

    d.    Defendant made material representations and statements of fact to Plaintiff and Class members that resulted in them reasonably believing the represented or suggested state of affairs to be other than what they actually were.

82.    The practices employed by Defendant, whereby Defendant advertises, promotes, and markets its Product as a "wasabi" Product are unfair, deceptive, and misleading, and in violation of NY GBL § 349.

83.    Under the circumstances, Defendant's conduct in employing these unfair and deceptive trade practices is malicious, willful, wanton and outrageous such as to shock the conscience of the community and warrant the imposition of punitive damages.

84.    Defendant's actions impact the public interest because Plaintiff was injured in exactly the same way as millions of others purchasing the Product as a result of and Defendant's generalized course of deception.

85.    The foregoing deceptive acts and practices are directed at consumers.

86.    The foregoing deceptive acts and practices proximately caused Plaintiff and Class members to suffer actual damages in the form of, *inter alia*, monies spent to purchase the Product. Plaintiff and Class members are entitled to recover compensatory damages, statutory damages, punitive damages, attorneys' fees and costs, and any other relief the Court deems appropriate. Damages can be calculated through expert testimony at trial.

## COUNT III

**DAMAGES FOR VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 350
(FALSE ADVERTISING LAW)**

**(brought on behalf of the Nationwide Class, in conjunction with the substantively similar consumer protection laws of other states and the District of Columbia to the extent New York consumer protection laws are inapplicable to out-of-state Class members, or, in the alternative, on behalf of the New York Class)**

87.    Plaintiff realleges and incorporates by reference the allegations contained in all preceding paragraphs and further alleges as follows:

88.    Plaintiff brings this claim individually, as well as on behalf of members of the Nationwide Class, for violations of NY GBL § 350.

89.     Alternatively, should the Court not certify Plaintiff's proposed Nationwide Class, Plaintiff brings this claim individually and on behalf of the members of the New York Class for violations of NY GBL § 350.

90.     Defendant has been and/or is engaged in the "conduct of … business, trade or commerce" within the meaning of N.Y. Gen. Bus. Law § 350.

91.     New York Gen. Bus. Law § 350 makes unlawful "[f]alse advertising in the conduct of any business, trade or commerce." False advertising includes "advertising, including labeling, of a commodity … if such advertising is misleading in a material respect," taking into account the extent to which the advertising fails to reveal facts material in light of … representations [made] with respect to the commodity …" N.Y. Gen. Bus. Law § 350-a(1).

92.     Defendant caused to be disseminated throughout New York and the United States, through advertising, marketing and other publications, statements that were untrue and/or misleading.

93.     Defendant's affirmative misrepresentations or deceptions of the Product being "wasabi" is material and substantially uniform in content, presentation, and impact upon consumers at large. Consumers purchasing the Product were, and continue to be, exposed to Defendant's material deceptions.

94.     Defendant's denial of the Product being "horseradish" is material and substantially uniform in content, presentation, and impact upon consumers at large. Consumers purchasing the Product were, and continue to be, exposed to Defendant's material deceptions.

95.     Defendant has violated N.Y. Gen. Bus. Law § 350 because its labeling of the Products as "wasabi" Product is material and likely to deceive a reasonable consumer.

96.     Plaintiff and Class members have suffered an injury, including the loss of money or property, as a result of Defendant's false and misleading advertising.

97.     Pursuant to N.Y. Gen. Bus. Law § 350-e, Plaintiff and Class members seek monetary damages (including actual damages and minimum, punitive, or treble and/or statutory damages pursuant to GBL § 350-a(1)), injunctive relief, restitution and disgorgement of all monies obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

## COUNT IV

## COMMON LAW FRAUD

**(brought on behalf of the Nationwide Class, in conjunction with the substantively similar common law of other states and the District of Columbia to the extent New York common law is inapplicable to out-of-state Class members, or, in the alternative, on behalf of the New York Class)**

98.     Plaintiff realleges and incorporates herein by reference the allegations contained in all preceding paragraphs and further alleges as follows:

99.     Defendant intentionally makes materially false and misleading representations regarding the nature of the Product.

100.    Plaintiff and Class members reasonably relied on Defendant's false and misleading representations. They did not know, and had no reason to know, that the Product does not contain real wasabi. They would not have purchased the Product, or paid an appropriately lesser amount, had they known the truth.

101.    Defendant knew and intended that Plaintiff and the Class members would rely on its misrepresentations.

102.    Plaintiff and Class members have been injured as a result of Defendant's fraudulent conduct.

103.    Defendant is liable to Plaintiff and Class members for damages sustained as a result of Defendant's fraud.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all other similarly situated, seek judgment against Defendant, as follows:

a.   An Order that this action be maintained as a class action, appointing Plaintiff as representative of the Nationwide Class or, in the alternative, the New York Class;

b.   An Order appointing the undersigned attorney as Class Counsel in this action;

c.   Restitution and disgorgement of all amounts obtained by Defendant as a result of its misconduct, together with interest thereon from the date of payment, to the victims of such violations;

d.   All recoverable compensatory and other damages sustained by Plaintiff and Class members;

e.   Actual and/or statutory damages for injuries suffered by Plaintiff and Class members in the maximum amount permitted by applicable law;

f.   An order (i) requiring Defendant to immediately cease their wrongful conduct as set forth in this Complaint; (ii) ordering Defendant to engage in a corrective advertising campaign; and (iii) requiring Defendant to reimburse Plaintiff and all Class members, up to the amounts paid for the Product;

g.   Statutory pre-judgment and post-judgment interest on any amounts;

h.   Payment of reasonable attorneys' fees and costs; and

i.   Such other relief as the Court may deem just and proper.

## **DEMAND FOR TRIAL BY JURY**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff, on behalf of themselves and all others similarly situated, demand a trial by jury on all questions of fact raised by the Complaint.


Dated: February 15, 2019

Respectfully submitted,


By: _____/s/ C.K. Lee_____
        C.K. Lee, Esq.

**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL4086)
Anne Seelig (AS3976)
30 East 39th Street, Second Floor
New York, NY 10016
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiff and the Class*